UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WILLIAM P. D. CADE, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.:   23-2227 (RC) |
| | : | |
| v. | : | Re Document No.:   5 |
| | : | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.*, | : | |
| | : | |
| Defendants. | : | |

# MEMORANDUM OPINION

### GRANTING DEFENDANTS' MOTION TO DISMISS

## I.  INTRODUCTION

Plaintiff William Cade petitions for a writ of mandamus to compel the United States Environmental Protection Agency and its Administrator, Michael S. Regan, in his official capacity (collectively "the EPA"), to enforce certain "right-to-repair" requirements against manufacturers of farm and other nonroad vehicles.[1]  The EPA has moved to dismiss this case for lack of subject-matter jurisdiction.  *See* Mot. to Dismiss for Lack of Subject Matter Jurisdiction ("Defs.' Mot."), ECF No. 5.  For the reasons explained below, Defendants' motion is granted, and the case is dismissed.

---

[1] Cade includes as co-plaintiff on all of his filings the National Farmers Union.  But because the National Farmers Union has not entered an appearance through an attorney, it is not a party to this case.  *See Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 202 & n.5 (1993) (explaining that artificial entities are required to enter an appearance through counsel); *see also Lennon v. McClory*, 3 F. Supp. 2d 1461, 1462 n.1 (D.D.C. 1998) ("[A corporation] must be represented by counsel or it will be treated as not having appeared at all . . . .").

## II.  BACKGROUND

Cade filed a petition for writ of mandamus to compel the EPA to enforce right-to-repair obligations—which would require manufacturers to provide service tools and information to consumers and independent repair facilities for the purpose of repairing their equipment.  *See* Petition for Writ of Mandamus ("Petition") at 8, ECF No. 1; Letter from Michael S. Regan, Adm'r, U.S. Env't Prot. Agency, to Rob Larew, Pres., Nat'l Farmers Union (Aug. 4, 2023); *see generally* Gabriel Dominic Gomez, Note, *Have Some Heart for the Heartland: A Call for a Federal Right to Repair Law*, 50 J. Legis. 149, 151–54 (2024) (explaining rationale behind right-to-repair laws for farm equipment).  Cade's petition specifically concerns "electronic emission control systems" used in the engines of nonroad vehicles.  *See* Petition at 3.

As relevant here, the Clean Air Act ("CAA") requires the EPA to promulgate rules to reduce emissions from sources such as vehicles, 42 U.S.C. § 7521(a)(1), including through the use of "major emission control components" such as "electronic emissions control unit[s]," *id.* § 7541(i)(2).  In a recent rulemaking, the EPA explained that the phrase "electronic emissions control unit" refers to "electronic control modules"—computers that control, among other things, the ratio of fuel mixture in engines.  *See* Greenhouse Gas Emissions Standards for Heavy-Duty Vehicles—Phase 3, 89 Fed. Reg. 29440, 29463, 29610 (April 22, 2024).

As acknowledged by the EPA, the CAA mandates that it promulgate regulations requiring manufacturers of "*motor vehicles or motor vehicle engines* . . . [to] provide . . . any and all information needed to make use of the emission control diagnostics system . . . including instructions for making emission related diagnosis and repairs." 42 U.S.C. § 7521(m)(5) (emphasis added); *see* Defs.' Mot. at 2.  This requirement, however, does not apply to nonroad vehicles because the CAA defines "motor vehicle" as "any self-propelled vehicle designed for

transporting persons or property *on a street or highway*." 42 U.S.C. § 7550(2) (emphasis added). Following an inquiry from Cade, an EPA employee advised Cade through email correspondence that "there is nothing that prevents" nonroad manufacturers from following the guidance of § 7521(m)(5) but that nothing requires it either.  Pl.'s Opp'n Mot. Dismiss at 2 ("Pl.'s Opp'n"), ECF No. 7.

Unhappy with the EPA's failure to adopt and enforce his preferred policy on right-to-repair for nonroad vehicles, Cade, proceeding *pro se*, filed a petition for writ of mandamus requesting the Court compel the EPA to act.  *See* Petition at 1.  Cade's petition asks the Court to compel the EPA "to enforce the consumer protection provisions within the [CAA]." *Id.* at 3. The EPA has moved to dismiss for lack of subject-matter jurisdiction on the grounds that Cade lacks standing and that the EPA's decision not to enforce is discretionary and nonreviewable and the United States has not waived its sovereign immunity.  *See* Defs.' Mot. at 2, 5.  Cade has filed a brief in opposition, *see* Pl.'s Opp'n at 4, Defendants filed a reply brief in support of their motion, *see* Defs.' Reply to Mot. to Dismiss ("Reply"), ECF No. 8, and Cade filed a surreply, *see* Pl.'s Reply to Defs.' Reply ("Surreply"), ECF No. 10.  EPA's motion is now ripe for review.

## III.  LEGAL STANDARD

Under Rules 12(b)(1) and 12(h)(3) of the Federal Rules of Civil Procedure, courts must dismiss any claim over which they lack subject-matter jurisdiction.  It is Plaintiff's burden to establish that the Court has subject-matter jurisdiction.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  To determine whether jurisdiction exists, a court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citation omitted).  While *pro se*

pleadings are held to a "less stringent standard than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted), *pro se* plaintiffs must still comply with the Federal Rules of Civil Procedure and the Court may not assume the role of the plaintiff's advocate, *see Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987); *Sun v. D.C. Gov't*, 133 F. Supp. 3d 155, 168 n.6 (D.D.C. 2015) ("[I]t is not the Court's job to canvass the record for documents supporting a *pro se* party's position.").

## IV.  ANALYSIS

Cade's complaint and subsequent filings allege—to the best of the Court's understanding—that the EPA has a statutory duty to enforce "right-to-repair" laws under the CAA and to require manufacturers of nonroad equipment such as farm vehicles to provide, apparently for free, "engines emission system parts, software tools, and documentation required by the CAA[.]" Petition at 5.  It is unclear under what statute or statutes Cade justifies his petition—possibly either the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, or the "citizen suit" provision of the CAA, 42 U.S.C. § 7604(a)(2).  Regardless, as explained below, Cade does not have standing to sue and neither statute provides a waiver of sovereign immunity as to the relief sought in Cade's petition.

### 1. Standing

The Court begins with standing.  To establish standing, Cade must demonstrate "three elements—injury in fact, causation, and redressability—which together constitute the 'irreducible constitutional minimum of standing.'" *Siegel v. U.S. Dep't of Treasury*, 304 F. Supp. 3d 45, 49 (D.D.C. 2018) (quoting *Lujan*, 504 U.S. at 560).  "A petitioner bears the burden of establishing each of the elements of standing." *Ohio v. Env't Prot. Agency*, 98 F.4th 288, 300 (D.C. Cir. 2024).  "[W]hen, as here, the petitioner is not [him]self the object of the government

4

. . . inaction he challenges, standing is not precluded, but is ordinarily substantially more difficult to establish." *Id.* (cleaned up).

For injury in fact, a plaintiff must point to the "invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 299–300 (citation omitted). For causation, the plaintiff's injury must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* at 300 (citation omitted). And for redressability, a plaintiff's injury must be "remediable by the court's control of the defendant." *Action All. of Senior Citizens of Greater Phila. v. Heckler*, 789 F.2d 931, 938 (D.C. Cir. 1986); *Ohio*, 98 F.4th at 300 ("[I]t must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." (quotation marks and citation omitted)). Cade cannot show causation or redressability.

Cade appears to argue that he has an injury that is traceable to the EPA because he purchased software from a manufacturer that did not include features that would have been included, he says, if the EPA had taken the enforcement actions he seeks to compel. *See* Pl.'s Opp'n at 4. Specifically, Cade says that he "purchased service software known as Customer Service ADVISOR from John Deere & Company" that did not include "[e]mbedded [s]oftware repair capabilities." *Id.* at 4, 7. Furthermore, Cade points to a Memorandum of Understanding between John Deere and the American Farm Bureau Association in which John Deere agreed to provide "Farmers" with access to "embedded software." *See id.* at 4 n.4. Assuming arguendo that John Deere's failure to provide certain software features could constitute an injury in fact,[2]

---

[2] It is altogether uncertain that John Deere's failure to provide the features Cade desires caused Cade an injury. Cade asserts, in part, that his injury arises from the fact that John Deere

5

Cade nevertheless lacks standing because his injury is not traceable to Defendants' conduct, nor is it redressable by a Court order requiring the EPA to enforce existing law.

To the extent that Cade suffered an injury because of John Deere's failure to provide "[e]mbedded [s]oftware repair capabilities" in connection with Cade's purchase of "service software," *id.* at 4, 7, that injury cannot be traced to the challenged inaction of the EPA. The EPA correctly observes that none of the statutes and regulations invoked by Cade require the manufacturers of *nonroad* vehicles or engines to provide such software, let alone that they do so for free. *See* Reply at 2–3. Moreover, the EPA is not a party to the Memorandum of Understanding between John Deere and the American Farm Bureau Federation. As such, any failure by the EPA to take enforcement action could not have caused Cade's injury because his alleged injury bears no relation to any enforcement action the EPA could have taken. *C.f. Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663, 666 (D.C. Cir. 1996) (en banc) (plaintiff must demonstrate "substantial probability" that *agency* action caused harm); *Cherry v. F.C.C.*, 641 F.3d 494, 495–498 (D.C. Cir. 2011) (plaintiff did not have standing to appeal FCC approval of license assignments because plaintiff's alleged injury—loss of ownership and voting rights—was caused by third parties, not by FCC action). Cade's alleged injury cannot be traced to EPA's failure to enforce a non-existent obligation because the EPA had no obligation to take the

---

agreed, in a Memorandum of Understanding with the American Farm Bureau Federation ("FB"), "to include [e]mbedded [s]oftware repair capabilities" with the purchase of certain equipment. Pl.'s Opp'n. at 4 (citing Memorandum of Understanding from American Farm Bureau Federation and John Deere ("MOU") (Jan. 8, 2023)). But there is nothing in the record to suggest that Cade is a beneficiary of the MOU because he does not assert that he is a "Farmer" or "Independent Repair Facility." *Id.*; MOU § I(B) ("The intended beneficiaries of this MOU are Farmers and Independent Repair Facilities located in all fifty (50) United States and Puerto Rico."). However, because lack of causation and redressability each independently doom Cade's standing argument, the Court need not decide whether the MOU can form the basis for an injury in fact.

enforcement action Cade seeks.  *See Am. Freedom L. Ctr. v. Obama*, 821 F.3d 44, 49–51 (D.C. Cir. 2016).

For the same reason, Cade's alleged injury cannot be redressed by this Court; even if every right-to repair law and regulation were fully enforced by the EPA, Cade's injury would not be remedied.  "In a case like this, in which relief for the petitioner depends on actions by a third party not before the court, the petitioner must demonstrate that a favorable decision would create 'a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered.'"  *Klamath Water Users Ass'n v. FERC*, 534 F.3d 735, 739 (D.C. Cir. 2008) (quoting *Utah v. Evans*, 536 U.S. 452, 464 (2002)); *see also Turner v. McGee*, 681 F.3d 1215, 1218 (10th Cir. 2012) ("[R]edressability turns on the scope of authority of the defendants.  We ask: Could these defendants, enjoined as [the plaintiff] has requested, remedy [the plaintiff's injury]?"); *cf. Doe v. Piper*, 165 F. Supp. 3d 789, 801 (D. Minn. 2016) ("The standing doctrine's 'redressability prong is not met when a plaintiff seeks relief against a defendant with no power to enforce a challenged statute' because in that scenario it is not possible for a court to grant a remedy that would redress the plaintiff's complained-of injury." (quoting *Bronson v. Swensen*, 500 F.3d 1099, 1111 (10th Cir. 2007))).  Because Cade's injury—assuming he has one—was not caused by EPA's conduct and because that injury is not redressable, Plaintiff lacks standing, and the Court must dismiss this case.

2.  *Petition for Writ of Mandamus*

Cade's petition requests that this Court issue a writ of mandamus compelling the EPA to "enforce the consumer protection provisions within the Clean Air Act" by requiring manufacturers of nonroad vehicles to provide "right to repair" information.  *See* Petition at 3, 8.  Even if Cade had standing, Cade's petition would be a nonstarter because an essential element of

a writ of mandamus is "a showing of a clear and indisputable right to the issuance of the writ." *Miller v. French*, 530 U.S. 327, 339 (2000) (internal quotations omitted). Cade has identified no statutes (nor any other sources of law) which compel the EPA to take the enforcement actions he desires. The statute and regulations that Cade does point to—the CAA and its implementing regulations—do not obligate the EPA to require nonroad vehicle manufacturers to provide the right to repair information that Cade seeks. *See generally* 42 U.S.C. § 7401 *et seq.*; 40 C.F.R. § 1039.101 *et seq.* And the Court has found no other source of law imposing upon the EPA a clear non-discretionary duty to require that right to repair information.

For a court to issue mandamus relief against a federal agency, a plaintiff must prove that the agency is in "most transparent violation" of a "crystal-clear legal duty" such as defying a court order or acting with unreasonable delay in its legal duties. *See In re Ctr. for Biological Diversity*, 53 F.4th 665, 670 (D.C. Cir. 2022). Because the EPA has no "crystal-clear legal duty" to require manufacturers of agricultural equipment or vehicles to provide "right to repair" information—given that no statute or regulation requires the EPA to do so—mandamus relief would be inappropriate here. *Id.* ("Absent a violation of a clear duty, this court is powerless to grant mandamus."). Mandamus relief is also inappropriate here given the inherently discretionary nature of the EPA's enforcement decisions. *See Work v. United States ex rel. Rives*, 267 U.S. 175, 177 (1925) ("[Mandamus] cannot be used to compel or control a duty in the discharge of which by law [a federal officer] is given discretion."); *see also Ass'n of Irritated Residents v. E.P.A.*, 494 F.3d 1027, 1028 (D.C. Cir. 2007) (explaining that EPA's exercise of enforcement discretion is generally nonreviewable); *Swecker v. Midland Power Coop.*, 743 F. App'x 472, 473 (D.C. Cir. 2018) ("[A]n agency's decision not to take enforcement action is

generally committed to an agency's absolute discretion and is therefore presumptively unreviewable."). Accordingly, Cade's petition for a writ of mandamus is denied.

### 3. Sovereign Immunity

Additionally, even if Cade's petition for writ of mandamus is treated as a complaint challenging the EPA's conduct under the APA (and assuming Cade had standing), dismissal would still be warranted. As an independent basis for dismissal, the EPA correctly observes that the United States has not waived its sovereign immunity with respect to Cade's claim and thus this Court has no subject-matter jurisdiction. *See* Defs.' Mot. at 2, 5; *United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). Cade argues that 5 U.S.C. § 702 "itself constitutes a waiver of sovereign immunity in cases where individuals seek relief other than monetary damages for wrongs due to federal agency actions for failure to act or [a]n abuse of discretion." Pl.'s Opp'n at 4. But Cade fails to recognize that § 702 does not waive sovereign immunity "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702.

Here, the CAA's "citizen suit" provision provides for a conditional waiver of sovereign immunity where the Administrator has failed to perform a non-discretionary duty. 42 U.S.C. § 7604(a)(2); *see Sierra Club v. Wheeler*, 956 F.3d 612, 616 (D.C. Cir. 2020). Because 42 U.S.C. § 7604 permits suits against the EPA under specific circumstances, the waiver of sovereign immunity in 5 U.S.C. § 702 is inapplicable here. In other words, if the "CAA does not create a nondiscretionary duty . . . [Cade] cannot rely on the APA as an alternative vehicle to provide subject matter jurisdiction in this case." *Sierra Club v. Wheeler*, 330 F. Supp. 3d 407, 421 n.5 (D.D.C. 2018). The question therefore becomes whether the CAA creates a

nondiscretionary duty that EPA has failed to perform.  *See Defs. of Wildlife v. Jackson*, 284 F.R.D. 1, 4 (D.D.C. 2012) ("The court has jurisdiction only if the EPA has failed to fulfill a nondiscretionary duty.").

"A duty is nondiscretionary under the CAA if it is 'clear-cut' and requires the Administrator to act by a 'date-certain deadline.'"  *Sierra Club v. Wheeler*, 956 F.3d at 616 (quoting *Sierra Club v. Thomas*, 828 F.2d 783, 791 (D.C. Cir. 1987)).  Here, there is certainly no requirement that the Administrator act by any deadline and there is no statute which requires or otherwise directs the EPA to take the enforcement actions Cade seeks.  Stated differently, there is no "date-certain deadline," or "clear-cut" requirement governing EPA's enforcement of its regulations on "embedded software repair capabilities" with respect to nonroad equipment.  Thus, the government has not waived its sovereign immunity.

Moreover, even if the APA's waiver of sovereign immunity applied, the Court would nonetheless hold that Cade's claim fails because the APA does not generally authorize judicial review of agency enforcement decisions.  In *Heckler v. Chaney*, the Supreme Court held that an agency's enforcement decision was "presumptively unreviewable" because "such a decision has traditionally been committed to agency discretion, and . . . the Congress enacting the APA did not intend to alter that tradition."  470 U.S. 821, 832 (1985) (internal quotation omitted).  The *Heckler* Court explained that because "the substantive statute [had not] provided guidelines for the agency to follow in exercising its enforcement powers," there was "no law to apply."  *Id.* at 831, 833.  Here—to an even greater degree than in *Heckler*—"there is no law to apply."  *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971) (citation omitted).  Cade has not pointed to any statute requiring the EPA to apply its "embedded software repair capabilities" regulation to nonroad vehicles.  Because the EPA has not failed to perform any nondiscretionary

duty, the Court concludes that Congress has not waived the government's sovereign immunity. Accordingly, this Court lacks subject-matter jurisdiction over Cade's claim.[3]

## V.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss and **DISMISSES** this case.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  July 17, 2024                                                                                     RUDOLPH CONTRERAS
                                                                                                                            United States District Judge

---

[3] In his brief in opposition, Cade briefly argues that regulating "highway and nonroad vehicles differently without a rational or substantial basis for th[e] distinction" violates the Equal Protection Clause of the Fourteenth Amendment.  *See* Pl.'s Opp'n at 5.  This equal protection argument fails for several reasons.  First, "[a] plaintiff cannot amend a complaint through opposition papers" and Cade did not raise an Equal Protection Claim in his petition.  *See Montgomery v. McDonough*, 682 F. Supp. 3d 1, 14 (D.D.C. 2023).  Second, it does not appear that Cade would have standing to bring an equal protection claim because the "injury in fact element of standing in an equal protection case is the denial of equal treatment resulting from the imposition of the barrier," *Am. Freedom Law Ctr. v. Obama*, 821 F.3d 44, 51 (D.C. Cir. 2016), and here Cade argues that certain vehicle manufactures have been denied equal treatment rather than that *he* has been denied equal treatment, *see* Petition at 8.  Third, "[t]he Equal Protection Clause of the Fourteenth Amendment applies only to the states" and here Cade's petition relates to the inaction of a *federal* agency.  *See Metro. Washington Chapter v. District of Columbia*, 57 F. Supp. 3d 1, 28 n.14 (D.D.C. 2014).  Fourth, even if the Court inferred that Cade intended to bring a claim under the Fifth Amendment, that claim would fail because Cade has insufficiently alleged that manufacturers of highway and nonroad vehicles are similarly situated.  *See Women Prisoners of D.C. Dep't of Corrections v. District of Columbia*, 93 F.3d 910, 924 (D.C. Cir. 1996) ("[T]he [d]issimilar treatment of dissimilarly situated persons does not violate equal protection.  The threshold inquiry in evaluating an equal protection claim is, therefore, to determine whether a person is similarly situated to those persons who allegedly received favorable treatment." (citations omitted)).